NAEGELI TRANSPORTATION,
Appellant,

v.

GULF ELECTROQUIP, INC., Appellee.

No. A14–92–00745–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 15, 1993.
Rehearing Denied May 6, 1993.

Carla Bennett, Houston, for appellant.

Raymond A. Krell, John S. Torigian, Cari Fox Brandt, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

LEE, Justice.

This is an appeal from a jury verdict awarding Gulf Electroquip (Gulf) $175,000 damages in contract, plus attorney's fees. Naegeli Transportation (Naegeli) appeals the trial court's submission of a special issue awarding lost profits, the omission of an instruction on the foreseeability of lost profits, the sufficiency of evidence to support a finding of lost profits, and the trial court's refusing to allow its expert on damages. We affirm.

The record reflects that on or about August 2, 1978, Gulf entered into a contract with Naegeli, to have the latter haul a transformer that the former purchased from Houston Lighting and Power (H.L. & P.). The transformer was to be moved from H.L. & P. to Naegeli's storage yard for an indefinite period of time, for a total consideration of $1,250. Gulf is in the business of buying, rebuilding, and selling used electrical and power equipment. Naegeli is in the business of hauling both heavy and light equipment, and occasionally provides storage locations for such equipment. The president of Gulf testified that his company had done business with Naegeli for many years prior to the events in the instant case. On or about August 25, 1987, Gulf demanded delivery of the transformer from Naegeli. Naegeli informed Gulf that the transformer had been delivered to Garner Trucking Company for scrapping on December 31, 1986. Naegeli had not received consent from Gulf to take such action.

Gulf filed suit against Naegeli based on conversion, breach of contract, violations of the Deceptive Trade Practices Act, breach of express warranty, negligence and gross negligence, seeking the fair market value of the transformer, as well as all consequential and incidental damages. The jury found that Naegeli breached its contract with Gulf, failed to comply with the express warranty, and was the producing cause of Gulf's damages. The jury awarded Gulf $25,000 for the fair market value of the transformer, $150,000 in consequential damages and $27,486 for attorney's fees.

■ In its first point of error, Naegeli contends that the trial court erred in submitting special issue no. seven, which asked the jury to award damages for net lost profits. Naegeli contends on appeal that this is a contract for bailment case and damages for net lost profits are not recoverable in such a contract when the bailment was converted. In that regard, Naegeli argues that Gulf is entitled only to the fair market value of the bailment at the time of the delivery to the bailee or at the time of conversion, whichever is more equitable.

Both parties agree that a contract existed between them concerning the transformer. In a letter sent by Naegeli to Gulf, dated August 2, 1978, (Plaintiff's Exhibit no. 12) Naegeli agreed to load and haul the

transformer from H.L. & P. to its storage yard for $1,250. In addition, the letter stated that, "[t]he transformer may be stored at our yard for an indefinite period of time." The letter was signed by Boyd Naegeli and Betty Naegeli. Naegeli concedes that it delivered the transformer to a third party for scrapping without the consent of Gulf. This is clearly a breach of the parties' express contract.

The Rules of Civil Procedure state that the trial court shall submit jury questions which are raised by the written pleadings and the evidence. TEX.R.CIV.P. 278. Therefore, if Gulf properly pleaded lost profits and there is evidence in support of that pleading, it would not be error for the trial court to submit an issue on lost profits. In its First Amended Original Petition, Gulf sought as damages the fair market value of the transformer, together with consequential and incidental damages. Lost profits are recoverable in a breach of contract cause of action, as an element of consequential damages. *Pace Corp. v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 348 (1955); *Texas Power & Light Co. v. Barnhill,* 639 S.W.2d 331, 334 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.); *City of La Grange v. Pieratt,* 142 Tex. 23, 175 S.W.2d 243 (1943). Consequential damages are special damages and must be pleaded and proved separately. *Odom v. Meraz,* 810 S.W.2d 241 (Tex.App.—El Paso 1991, writ denied, 835 S.W.2d 626 (Tex.1992). Since lost profits are includable as an element of consequential damages, and Gulf specifically pled such damages, submission of a special issue on lost profits was proper on the basis of the pleadings. We note that Naegeli failed to specially except to Gulf's damages claim.

As for evidence on lost profits, our review of the record reveals the uncontroverted testimony of Gulf's president, James Peterson, establishing that the profits lost as a result of Naegeli's failure to deliver the transformer to Gulf amounted to $295,-000. This was based on Mr. Peterson's personal knowledge of an agreement that Gulf had with a company out of Mexico, to purchase this transformer. With the prop-

er pleading, and evidence supporting such pleading, the trial court was required to submit a question to the jury on lost profits. We hold therefore that it was not error for the trial court to submit special issue no. seven on lost profits. Appellant's first point of error is overruled.

In its second point of error, Naegeli argues in the alternative, that the trial court erred in failing to instruct the jury on the foreseeability of lost profits along with special issue no. seven. Naegeli argues that Gulf, as plaintiff, had the burden of submitting an instruction on the foreseeability of lost profits. Naegeli correctly cites *Winkle Chevy–Olds–Pontiac v. Condon,* 830 S.W.2d 740 (Tex.App.—Corpus Christi 1992, writ dism'd), for the proposition that if the trial court submits a special issue on lost profits, it must also submit an instruction on the foreseeability of the lost profits. *Id.* at 746. However, in *Winkle,* the court of appeals also noted that the complaining party preserved error by properly objecting.

In order to challenge the trial court's failure to submit an instruction to the jury, the complaining party must request in writing and tender to the court a substantially correct wording of the instruction. *National Fire Ins. v. Valero Energy,* 777 S.W.2d 501, 507 (Tex.App.— Corpus Christi 1989, writ denied). When a party does not submit to the trial court requested instructions in substantially correct form, he waives error. *Heller v. Armstrong World Industries, Inc.,* 708 S.W.2d 18, 20 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

We are unable to find in the record where Naegeli requested or tendered a substantially correct wording of an instruction on foreseeability of lost profits to the court. Furthermore, we are unable to find where Naegeli ever objected to the submission of Question no. 7 on the grounds that foreseeability of lost profits was not included in the instruction. Naegeli's only objection to Question no. 7 was that the only element of damages that a plaintiff would be entitled to is the fair market value of the item destroyed. Because Naegeli

failed to tender such an instruction, the trial court's failure to submit such instruction is not grounds for reversal. *Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 602 (Tex.App.—Corpus Christi 1986, no writ); Tex.R.Civ.P. 278. Appellant's second point of error is overruled.

In its third point, Naegeli contends the trial court erred in submitting the jury charge on lost profits because the amount of the loss was not reasonably certain. Only those lost profits that can be shown with reasonable certainty by competent evidence may be recoverable as damages. *Texas Power & Light*, 639 S.W.2d at 336. The profits need not be susceptible to exact calculation; it is sufficient that the amount of loss is shown by competent evidence with a reasonable degree of certainty. *Southwest Battery Corporation v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938); *General Supply and Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913, 921 (Tex.App.—Tyler 1972, writ ref'd n.r.e.). What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Holt Atherton Industries, Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992).

A witness may provide evidence of lost profits by testifying from personal knowledge as to what profits would have been. See *White v. Southwestern Bell Telephone Co., Inc.*, 651 S.W.2d 260 (Tex. 1983); *Pena v. Ludwig*, 766 S.W.2d 298 (Tex.App.—Waco 1989, no writ). Although supporting documents may affect the weight of the evidence, it is not necessary to produce in court, the documents supporting the opinions or estimates. *Holt*, 835 S.W.2d at 84.

Gulf's president, James Peterson, testified both to the sale of rebuilt transformers generally, and to the proposed sale of this specific transformer. Mr. Peterson first testified to receiving a call from Mr. Vasquez of Cementos Apasco in Mexico. Mr. Vasquez was in need of another transformer of the same rating as the one in the instant case. Mr. Peterson told him he had one available for $295,000. Mr. Peterson then explained how he arrived at a lost profit of $260,000. The transformer cost Gulf $10,000. The process of preparing the transformer for resale, which was explained in detail, would cost approximately $25,000. Added to the $1,250 paid to Naegeli for transportation of the transformer, would amount to $36,000, thus, leaving a profit of $260,000 from the sale price of $295,000.

Mr. Peterson's testimony was based on his personal knowledge and over thirty years of experience in the business. Furthermore, Naegeli introduced no evidence controverting Mr. Peterson's testimony, nor did Naegeli ever object to Mr. Peterson's testimony. We find that there was certainly ample evidence from which a jury could calculate lost profits with a reasonable degree of certainty. Appellant's third point of error is overruled.

In its final point of error, Naegeli argues that the trial court abused its discretion in refusing to allow the testimony of Clyde Jackson, its expert witness. Mr. Jackson's testimony was intended to controvert the testimony of Gulf's expert as to the repairability and value of the transformer in issue.

It is within the trial court's discretion to determine whether a particular witness is qualified to testify as an expert, and such determination will not be disturbed on appeal unless a clear abuse of discretion is shown. *Rogers v. Gonzales*, 654 S.W.2d 509, 513 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

> The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action. Rather, it is a question of whether the court acted without reference to any guiding rules and principles. Another way of stating the test is whether the act was arbitrary or unreasonable. The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred.

*Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241 (Tex.1986).

 Expert testimony cannot be based upon mere guess or speculation, but must have a proper factual basis. *Ochs v. Martinez,* 789 S.W.2d 949, 958 (Tex.App.—San Antonio 1990, writ denied). Opinions which are purely speculative or conjectural in their nature should be excluded. *UMC, Inc., v. Coonnrod Elec. Co., Inc.,* 667 S.W.2d 549, 559 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.).

In its decision to disallow Naegeli's expert witness, the trial court considered the following factors: (1) Mr. Jackson is not an electrical engineer; (2) he was not employed at Houston Lighting and Power (H.L. & P.) in 1978 when Gulf purchased the transformer in issue; and (3) prior to his employment at H.L. & P., Mr. Jackson held a managerial position at a retail store. In addition, when questioned by counsel for Gulf, Jackson admitted that he has never personally seen or inspected the transformer in issue, nor has he seen any records describing this transformer. He was personally unaware of the condition or value of the transformer. Furthermore, Jackson admitted he knew nothing about the transformer from his personal knowledge or investigation, instead, learned about the transformer through third persons. Finally, Jackson had no personal knowledge of H.L. & P.'s procedures with respect to this transformer, its sale or purchase, in 1978. The only testimony Jackson could offer was to H.L. & P.'s practices of selling transformers from 1980 to 1989.

The record contains no indication that the trial court was arbitrary or unreasonable, or acted without reference to any guiding rules or principles. Not only was Jackson unfamiliar with the transformer in issue, he could not testify to what the policies of H.L. & P. were in 1978, or if there was a deviation from any policy. There are sufficient facts in the record upon which the trial court could act rationally in exercising its discretion to disallow Jackson's testimony. The trial court did not abuse its discretion in excluding his testimony. Appellant's fourth point of error is overruled.

The judgment of the trial court is affirmed.