COURT OF APPEALS
SECOND 
DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-145-CV
  
  
ATLAS COPCO TOOLS, INC.                                                   APPELLANT
  
V.
  
AIR POWER TOOL & HOIST, 
INC.                                               APPELLEE
  
------------
 
FROM THE 342ND 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
OPINION
 
------------
I. INTRODUCTION
        Appellant 
Atlas Copco Tools, Inc. manufactures and sells industrial tools throughout the 
United States, primarily through regional distributors. Beginning in 1994, 
appellee Air Power Tool & Hoist, Inc. became one of appellant’s 
nonexclusive authorized distributors within parts of Texas and Louisiana. In May 
2000, appellant appointed another Texas distributor, Tooling Technologies, L.L.C., 
by executing a nonexclusive distribution agreement, which included beneficial 
provisions that appellee’s agreement did not contain. Soon after, appellant 
began assigning customers between the two distributors. In September of 2000, a 
new contract was negotiated between appellant and appellee. Appellee felt it was 
coerced into signing the new agreement, which ceded large, existing customers to 
Tooling Technologies. During late 2000, appellant began receiving service 
complaints from its Motor Vehicle Industry (“MVI”) customers, which 
purchased the more complex electrical tools as opposed to basic pneumatic “air 
powered” tools. As a result, in late 2000 and early 2001, appellant assigned 
all of appellee’s MVI accounts to Tooling Technologies. Appellee felt it was 
forced to agree to these changes. Appellant notified appellee’s 
“reassigned” customers by email.
        On 
April 4, 2001, appellee filed suit against appellant and Tooling Technologies 
for anticompetitive practices under Section 15.05 of the Texas Free Enterprise 
and Antitrust Act (“TFEAA”), false promise of future performance, business 
disparagement, tortious interference with prospective relationships, fraud and 
constructive fraud, misrepresentation of confidential information, and negligent 
or intentional misrepresentation. The trial court granted summary judgment for 
Tooling Technologies on all claims against it.
        At 
trial, the jury found that (1) appellant engaged in “a contract, combination 
or conspiracy in restraint of trade” and that such action was “willful and 
flagrant” under the TFEAA; (2) appellant disparaged the business or reputation 
of appellee; and (3) appellant breached the relationship of trust and confidence 
that existed between appellant and appellee. Based on the jury’s findings, the 
trial court awarded appellee $700,000, which it trebled pursuant to the finding 
of willful or flagrant conduct under the TFEAA to $2,100,000, attorney’s fees 
in the amount of $123,761.56, and court costs in the amount of $9,160.60. After 
the trial court denied appellant’s motion for judgment notwithstanding the 
verdict and motion for new trial, this appeal followed. We reverse and render.
II. SUFFICIENCY OF THE EVIDENCE SUPPORTING 
DAMAGES
        In 
its seventh issue, appellant argues that the evidence was legally and factually 
insufficient to support the jury’s award of damages. Here, because appellee 
bore the burden of proof at trial, we will address appellant’s legal 
sufficiency complaint as a “no evidence” issue. See Gooch v. Am. Sling 
Co., 902 S.W.2d 181, 184 (Tex. App.—Fort Worth 1995, no writ.). In 
determining a “no-evidence” issue, we are to consider only the evidence and 
inferences that tend to support the finding and disregard all evidence and 
inferences to the contrary. Bradford v. Vento, 48 S.W.3d 749, 754 (Tex. 
2001); Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 
1996); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). 
Anything more than a scintilla of evidence is legally sufficient to support the 
finding. Cazarez, 937 S.W.2d at 450; Leitch v. Hornsby, 935 S.W.2d 
114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence 
furnishes some reasonable basis for differing conclusions by reasonable minds 
about the existence of a vital fact. Rocor Int’l, Inc. v. Nat’l Union 
Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).
        A 
“no-evidence” issue may only be sustained when the record discloses one of 
the following: (1) a complete absence of evidence of a vital fact; (2) the court 
is barred by rules of law or evidence from giving weight to the only evidence 
offered to prove a vital fact; (3) the evidence offered to prove a vital fact is 
no more than a mere scintilla of evidence; or (4) the evidence establishes 
conclusively the opposite of a vital fact. Uniroyal Goodrich Tire Co. v. 
Martinez, 977 S.W.2d 328, 334 (Tex. 1998) (citing Robert W. Calvert, "No 
Evidence" and "Insufficient Evidence" Points of Error, 
38 TEX. L. REV. 
361, 362-63 (1960)), cert. denied, 526 U.S. 1040 (1999).
        A 
party seeking to recover lost profits must prove the loss through competent 
evidence with reasonable certainty. Szczepanik v. First S. Trust Co., 883 
S.W.2d 648, 649 (Tex. 1994); VingCard A.S. v. Merrimac Hospitality Sys., Inc., 
59 S.W.3d 847, 863 (Tex. App.—Fort Worth 2001, no pet.). While this test is a 
flexible one in order to accommodate the myriad circumstances in which claims 
for lost profits arise, at a minimum, opinions or estimates of lost profits must 
be based on objective facts, figures, or data from which the amount of lost 
profits can be ascertained. Tex. Instruments, Inc. v. Teletron Energy Mgmt., 
Inc., 877 S.W.2d 276, 279 (Tex. 1994); Szczepanik, 883 S.W.2d at 649; 
VingCard A.S., 59 S.W.3d at 863. In other words, “reasonable 
certainty” is not demonstrated when the profits claimed to be lost are largely 
speculative or a mere hope for success, as from an activity dependent on 
uncertain or changing market conditions, on chancy business opportunities, or on 
promotion of untested products or entry into unknown or unproven enterprises. Teletron 
Energy Mgmt., Inc., 877 S.W.2d at 279-80; VingCard A.S., 59 S.W.3d at 
863.
        Here, 
over objections of appellant lodged before, during, and after trial, the trial 
court permitted appellee to present the testimony of its damages expert, Janet 
Collinsworth. Collinsworth’s testimony was the only evidence presented by 
appellee as to the amount of its purported damages. Collinsworth presented 
alternative damage models of “lost profits” and “injury to corporate 
goodwill,” of $2,239,450 and $2,283,202 respectively, which were both premised 
on projections of lost profits from the sales of appellant’s products for 
nearly six years, or through 2006.
        In 
the lost profits model, Collinsworth simply totaled lost profits from 2001, the 
year of termination, through 2006 arising from projected lost sales of 
appellant’s products, and discounted the total to present value. In the 
goodwill model, Collinsworth ran her profit projections through a pro forma 
income statement, then totaled up the projected cash flow over six years, added 
a “terminal value” representing projected cash flow for an indefinite period 
thereafter, discounted the totals to present value, and then compared the 
results to similar projections assuming no appellant sales. These projections, 
however, ignored the terms of the agreement, the facts of the case, and Texas 
law regarding the calculation of lost profits.
A. Terms of the Agreement
        The 
evidence conclusively established that appellee had no right to sell 
appellant’s products except for their agreement. The September 1, 2000 
agreement in effect at the time appellee filed suit in April 2001 provided that 
it would remain in effect for one year and would automatically renew for 
additional one-year terms, unless either party provided forty-five days prior 
written notice. It also allowed either party to terminate the agreement without 
cause upon sixty days written notice. Appellant sent appellee such a termination 
letter effective October 15, 2001. Moreover, appellee’s principals testified 
that shortly after a March 2001 meeting at which appellant told them to stop 
selling to MVI accounts, they decided to no longer honor their obligations under 
the agreement.
        In 
United Way of San Antonio, Inc. v. Helping Hands Lifeline Foundation, Inc., 
Helping Hands, a former affiliate of the United Way, brought suit against the 
United Way for breach of contract and business disparagement. 949 S.W.2d 707, 
711 (Tex. App.—San Antonio 1997, writ denied).[1]  
At trial, the court allowed Helping Hands to present expert testimony regarding 
damages based on lost funding for a period of ten to twenty years, despite the 
fact that pursuant to the agreement between the parties, such funding was 
renewable on a yearly basis, was entirely within the discretion of the United 
Way, and there were no guarantees Helping Hands would receive the funding each 
year. Id. After reviewing cases involving proof of lost profits by 
for-profit entities, the court of appeals held that the expert testimony did not 
support the excessive damage award calculated over the ten to twenty year period 
because “the mere hope of funding renewable at the discretion of another party 
will not support recovery of any future funds the other party could withhold at 
its discretion,” and “Helping Hands’ expectation of renewal of funding in 
light of the United Way’s prior warnings were at best hopeful; ‘in reality, 
they were little more than wishful.’” Id. at 711-12 (quoting Tex. 
Instruments, 877 S.W.2d at 280).
        Here, 
Collinsworth’s projections were no more than wishful; she conceded she ignored 
the terms of the agreement when measuring lost profits over a six-year period. 
At trial, Collinsworth testified that in deciding what time frame to use, 
“[t]he contract was not an issue for [her]” and she “did not consider [the 
termination] letter to be relevant.” In selecting six years as opposed to some 
other period, she simply said that, “2006 was, I felt, a long enough time 
frame to get a snapshot of [appellee’s] value over time.” She added that the 
time frame was “consistent” with conversations she had with two individuals 
who owned “similar all tool distributorships,” who had told her “if you 
did what you were supposed to do, you could expect a long-term relationship.” 
Collinsworth further testified that there was “no specific document [she 
could] point to” in selecting the time frame. Moreover, Collinsworth did no 
projections of damages for a sixty-day period, or through September 1, 2001 (the 
end of the contractual one-year term), or through October 15, 2001 (the date of 
actual termination).
        Appellee 
argues that because the agreement was renewable and no notice to terminate was 
provided before the suit was filed, Collinsworth could aptly rely upon the 
agreement as a valid, subsisting agreement with expectations of automatic 
renewals when she made her calculations. Primarily, this argument fails because 
Collinsworth testified that she did not consider the terms of the agreement at 
all in calculating her lost profit projections. Additionally, considering the 
terms of the agreement and the deterioration of the parties’ business 
relationship prior to the suit, appellee and its expert could not have had a 
reasonable expectation of continued sales of appellant’s products.
        Appellee 
also contends that because its damages sound in tort, appellant cannot take 
advantage of a contractual limitation on damages. In effect, appellee argues 
that lost profit damages not recoverable in a contract action because they are 
speculative nevertheless are recoverable under other legal theories. However, no 
case so holds. The cases cited by appellee concern situations where third 
parties have sought to escape tortious interference liability pursuant to terms 
of the contracts they were alleged to have interfered with. See, e.g., 
Juliette Fowler Homes, Inc. v. Welch Assocs., 793 S.W.2d 660, 666 (Tex. 
1990); Sterner v. Marathon Oil Co., 767 S.W.2d 686, 689 (Tex. 1989). 
Here, appellant is not a third-party tortfeasor seeking to limit tort damages 
based on some limitation in a contract to which it was not a party. The only 
damages claimed in this case by appellee are damages flowing from its 
contractual status as appellant’s distributor. Therefore, appellant is not 
seeking to take advantage of some “contractual limitation” on damages.
        While 
Collinsworth’s speculation that the agreement would have perpetually renewed 
over a six year period was at odds with the terms of the agreement and the 
evidence presented regarding the relationship between the parties, the use of 
the six-year period was not the only deficiency in Collinsworth’s testimony.
B. Facts of the Case
        Collinsworth’s 
projections also included lost profits from sales to customers that appellee 
decided to stop selling to or relinquish, that were not part of appellee’s 
territory under the agreement, and that refused to purchase appellant’s 
products through appellee due to dissatisfaction with appellee’s service. 
Additionally, Collinsworth projected a dramatic increase in appellee’s sales 
of appellant’s products over the six-year period that had no relation to 
established results, but were based on one record year and the unsubstantiated 
projections received from appellee’s owner, who did not testify regarding his 
projections. This was plainly improper. See VingCard, 59 S.W.3d at 864 
(holding lost profit projections were properly based on the plaintiff’s 
existing market and client base and established sales record).
C. Calculating Lost Profits Under Texas Law
        Finally, 
Collinsworth incorrectly calculated net profits by measuring lost gross profits, 
not lost net profits, as the law requires. See Holt Atherton Indus. v. Heine, 
835 S.W.2d 80, 83 n.1 (Tex. 1992) (holding proper measure of damages is lost 
net profits). “Net profits” are defined as “what remains in the conduct of 
business after deducting from its total receipts all of the expenses incurred in 
carrying on the business.” Turner v. PV Int’l, 765 S.W.2d 455, 456 
(Tex. App.—Dallas 1998, pet. denied). Here, Collinsworth testified she 
deducted only the “incremental costs of selling the tools” and not other 
expenses incurred in carrying on the business of appellee.
III. CONCLUSION
        As 
discussed above, Collinsworth’s testimony was based on speculation and 
conjecture, and, at times, directly contradicted the evidence in this case and 
Texas law. In sum, we find her testimony and the data she based it on fall short 
of the legal requirement that lost profits be proven by competent evidence with 
reasonable certainty. Moreover, since the only evidence supporting appellee’s 
damages award lacked probative value and constituted “no evidence,” appellee 
failed to establish lost profits as a matter of law.[2]  
Schaefer v. Tex. Emp. Ins. Ass’n, 612 S.W.2d 199, 204-05 (Tex. 1980); 
Capital Metro. Transp. Auth. v. Cent. of Tenn. Ry. & Navigation Co., 114 
S.W.3d 573, 582 (Tex. App.—Austin 2003, no pet.); Naegeli Transp. v. Gulf 
Electoquip, Inc., 853 S.W.2d 737, 741 (Tex. App.—Houston [14th 
Dist.] 1993, writ denied). Therefore, we sustain appellant’s seventh issue. In 
light of our decision, we need not address appellant’s remaining issues on 
appeal. See Tex. R. App. P. 
47.1. Having sustained appellant’s no-evidence issue, it is our duty to render 
judgment for appellant because that is the judgment the trial court should have 
rendered. See Tex. R. App. P. 
43.3; Vista Chevorelt, Inc. v. Lewis, 709 S.W.2d 176, 176 (Tex. 1986); Nat’l 
Life & Accident Ins. Co. v. Blagg, 438 S.W.2d 905, 909 (Tex. 1969). 
Thus, we reverse the trial court’s judgment and render judgment that appellee 
take nothing.
 
  
                                                          SAM 
J. DAY
                                                          JUSTICE

PANEL B: HOLMAN and GARDNER, 
JJ.; and SAM J. DAY, J. (Retired, Sitting by Assignment)

DELIVERED: JANUARY 22, 2004
 

NOTES
1. 
Appellee argues United Way of San Antonio is distinguishable on the facts 
from this case in that Helping Hands had received several warnings concerning 
future funding, had failed to follow probationary conditions, had not taken 
advantage of available multi-year funding, and the contract was not renewable. 
We do not agree. Appellee was aware that it was not providing satisfactory 
service to its MVI customers and had agreed to a one year renewable contract 
that allowed a no-cause sixty-day termination. Moreover, the case clearly states 
that Helping Hand’s funding agreement was renewable. United Way of San 
Antonio, 949 S.W.2d at 711.
2. 
While the jury awarded appellee $700,000 in actual damages as opposed to 
$2,239,450 and $2,283,202, which Collinsworth testified they lost, it is clear 
that the jury relied to some extent on her testimony in that no other evidence 
was presented as to damages. Moreover, since appellee’s net operating income 
was $42,338 for 1999 and $55,248 for 2000 and appellant’s products accounted 
for only twenty percent of appellee’s total sales, only by placing weight on 
Collinsworth’s highly speculative calculations could the jury have concluded 
that $700,000 was an appropriate award.