Opinion filed June 1, 2006












 
 
  
 
 







 
 
  
 
 




Opinion filed June 1, 2006

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-05-00098-CV 

                                                    __________

 

                         TEXAS MUTUAL INSURANCE CO., Appellant

 

                                                             V.

 

PAULA LEDBETTER, AS REPRESENTATIVE OF THE ESTATE OF
CHARLES WADE LEDBETTER, Appellee

 



 

                                         On
Appeal from the 259th District Court

 

                                                          Jones
County, Texas

 

                                                   Trial
Court Cause No. 20,371

 



 

                                                                   O
P I N I O N

 

This is a wrongful-death action arising out of a
work-related accident.  The trial court
approved a settlement agreement between Paula Ledbetter, as Representative of
the Estate of Charles Wade Ledbetter; Randy Nelms d/b/a Nelms Electric; and
Williams Scotsman, Inc. and struck  Texas
Mutual Insurance Company=s
petition in intervention.  We reverse and
remand.

 

 








                                                               Background
Facts

Charles Wade Ledbetter was fatally electrocuted
while in the course and scope of his employment for Key City Septic Service,
Inc.  Paula Ledbetter, individually, as
representative of the Estate of Charles Wade Ledbetter, and as next friend of
Dustin Wade Ledbetter, a minor; Tonja Ledbetter; and Jamie Ledbetter filed a
wrongful-death action against Randy Nelms d/b/a Nelms Electric and Williams
Scotsman, Inc. claiming that their negligence proximately caused Charles=s death.  The parties reached a settlement
agreement.  Because Charles=s son Dustin was a minor, the
settlement agreement was presented to the trial court for approval.

Texas Mutual was Key City=s
workers=
compensation carrier.  Texas Mutual filed
a petition in intervention on the day of the settlement hearing.  Texas Mutual claimed that it had paid
medical, funeral, and indemnity benefits because of Charles=s accident and requested judgment for
reimbursement of those payments.

At the beginning of the hearing, appellee=s trial counsel announced that all
claims, save those asserted by the estate, were being nonsuited.  Appellee=s
trial counsel then asked the trial court to strike Texas Mutual=s petition, stating:

Before we even filed the lawsuit, this workers= comp carrier had a person present at
the on-site inspections.  As soon as I
filed the lawsuit and sent them a copy of the petition they have done nothing
in this case until this morning when they filed a petition; therefore, we would
move the Court to strike their petition of intervention.

 

The trial court took the request under advisement, and the
hearing proceeded.  Paula, Charles=s widow, testified that the total amount
of the settlement was 4.5 million; that all of the settlement monies were being
paid to the estate for her husband=s
conscious pain and suffering; and that the net payment to the estate was
$2,388,545.40.  Paula also testified that
she and her son were receiving workers=
compensation benefits.  On cross, she
testified that these benefits were approximately $1,258 per month.

Paula acknowledged that she and her family were
releasing all claims that they might have against the defendants.  There was some reference to structuring the
settlement payments, but she provided no detail and did not testify that any
portion of the settlement was being held in trust for the benefit of her minor
son.

 








The only evidence of Charles=s conscious pain and suffering came
from Paula who testified on direct:

Q.        [I]s
it your understanding that at least the facts in this case are your husband was
electrocuted by 110 volts of electricity?

 

A.        Yes,
sir.

 

Q.        And
that he -- there were markings on his body where maybe he could not get away
from this metal strap that he was in contact with?

 

.
. . .

 

A.        Yes,
sir.

 

.
. . .

 

Q.        And
that he may have suffered in that regard?

 

.
. . .

 

A.        Yes,
sir.

 

Texas Mutual=s
attorney asked Paula if she was aware of any evidence that her husband suffered
any conscious pain and suffering. 
Appellee=s trial
counsel objected:

I=m
going to object to that as being multifarious and unfair.  It=s
calculated to lead to a response that -- you know, this is a prove up hearing
for a minor settlement, and he=s
asking her these things in painful areas.

 

The trial court sustained the objection even though the minor=s claims had been previously nonsuited
and all of the settlement proceeds were being paid to the estate for conscious
pain and suffering.

When appellee=s
trial counsel rested, he renewed his motion to strike, stating:

[I]n
summary, I believe there is no evidence of what, if any, has been paid by
comp.  I don=t
think they=re
entitled to it because it=s
-- all the money is being paid to the Estate. 
The individual claims were dismissed, and so we would ask that Texas
Mutual, or whatever their name is, not receive anything and not be able to take
any credit for any future payments.

 








Texas Mutual was given the opportunity to call witnesses, and its
counsel tried to call himself.  Appellee=s trial counsel objected because Texas
Mutual=s
attorney had not been timely identified as a witness per the trial court=s scheduling order.[1]  That objection was sustained.  Texas Mutual then made an offer of proof
which included the following letter dated December 1, 2004, from appellee=s trial counsel to Texas Mutual:

Dear
Mr. Watson:

 

As we discussed over the telephone today, the
above-referenced case has been resolved between the parties provided the Court
approves of the settlement terms.  It is
my understanding that you have a copy of our pleadings in the suit which is
pending in Jones County, Texas.  A
settlement hearing is scheduled for 9:00 a.m., December 14, 2004, in the 259th
Judicial District Courtroom in Anson, Texas. 
It is my further understanding that your company has paid $27,942.00 in
benefits, to date.

 

As we discussed, due to the nature of the
settlement and the value of future benefits to which Paula Ledbetter and her
ten year old son, Dustin Ledbetter, are entitled, I strongly encourage your
company to intervene, or at least have an attorney appear at the hearing.  The exact amounts and time of the payments
from the potential settlement have not been determined at this time.  However, I can assure you that Dustin
Ledbetter will not receive any money until he is of the age of majority.

 

Texas Mutual=s
counsel testified during the offer of proof that as of December 1, 2004, Texas
Mutual had paid $27,942 for indemnity benefits, medical bills, and funeral
expenses.  Following the conclusion of
all evidence, the trial court struck Texas Mutual=s
petition.  The court ordered Texas Mutual
to remain a party, found that it was not entitled to reimbursement, and ordered
it to continue making benefit payments without seeking any credit for money
reflected in the settlement agreement. 
The trial court signed a judgment on December 14, 2004, which approved
the parties=
settlement.     Texas Mutual timely requested findings of fact and conclusions of
law and timely filed a notice of past due findings.  The trial court did not timely prepare
findings or conclusions, and both parties submitted their briefs.  Subsequently, on March 9, 2006, the trial
court forwarded findings and conclusions to this court.[2]

 

 








                                                                         Issues

Texas Mutual challenges the trial court=s judgment with four issues.  Texas Mutual contends that the trial court
abused its discretion by striking the petition in intervention, erred when it
granted plaintiffs= nonsuit,
erred when it denied Texas Mutual=s
statutory right of subrogation, and erred when it ordered Texas Mutual to
continue making benefit payments.  Appellee
asserts three cross-issues.  She asks
this court to strike an affidavit Texas Mutual attached to its brief; and she
challenges the standard of review for Texas Mutual=s
second, third, and fourth issues.[3]

                Is
the Affidavit of Texas Mutual=s
Representative Properly Before this Court?

Texas Mutual=s
representative, David Watson, prepared an affidavit dated June 14, 2005 B exactly three months after Texas
Mutual=s notice
of appeal B which
purports to provide evidence of Texas Mutual=s
payments. Watson=s
affidavit was attached as an exhibit to Texas Mutual=s
brief.  Appellee asks us to strike Watson=s affidavit because it attempts to
inject facts which are outside the record.

Appellee=s
point is well taken.  Our review is
limited to the record.  See Guajardo
v. Conwell, 46 S.W.3d 862, 864 (Tex. 2001)(refusing to consider order which
was not included in the clerk=s
record); Parmer v. State, 38 S.W.3d 661, 667 (Tex. App.CAustin 2000, pet. ref=d)(refusing to consider counsel=s affidavit filed after motion for new
trial was overruled by operation of law). 
Because Watson=s
affidavit was not before the trial court, we may not consider it for any
purpose.  Appellee=s
first cross-issue is sustained.

    Did
the Trial Court Abuse its Discretion by Striking Texas Mutual=s Petition in Intervention?








Intervention is governed by Tex. R. Civ. P. 60.  This rule provides that A[a]ny party may intervene by filing a
pleading, subject to being stricken by the court for sufficient cause on the
motion of any party.@  Courts have considerable discretion when
determining whether an intervention should be stricken.  Guar. Fed. Sav. Bank v. Horseshoe
Operating Co., 793 S.W.2d 652, 657 (Tex. 1990).  The Texas Supreme Court, however, has said
this discretion is abused if:  (1) the
intervenor establishes that it could have brought suit in its own right; (2)
the intervention will not complicate the case by an excessive multiplication of
the issues; and (3) the intervention is almost essential to effectively protect
the intervenor=s
interest.  Id.; see also
Caprock Inv. Corp. v. FDIC, 17 S.W.3d 707, 710-11 (Tex. App.CEastland 2000, pet. denied)(trial court
abused its discretion by striking petition in intervention which satisfied all
three elements of Guaranty Federal).

Texas Mutual contends that the trial court abused
its discretion because Texas Mutual had the right to file a separate suit in
its own name, because the intervention did not complicate the case, and because
intervention was necessary to prevent payment to appellee before it recouped
its subrogation interest.  Appellee
answers that the trial court properly exercised its discretion and that, even
if the trial court erred, any error was harmless because Texas Mutual=s petition was struck after it was
given the opportunity to present evidence. 
Because Texas Mutual was ordered to remain a party, appellee suggests
that the trial court may have misspoken when it said Texas Mutual=s petition was being struck and that it
may have meant to say that Texas Mutual=s
plea was denied because of insufficient evidence.  The trial court=s
findings and conclusions clarify this by indicating that the petition was in
fact struck.

The trial court found that Texas Mutual=s petition was inadequate as a matter
of law because it failed to specify:

!                  
the amounts paid for funeral expenses or the
recipient of those payments;

!                  
the amounts paid for indemnity benefits; 

!                  
the recipient of indemnity benefit payments;

!                  
the amount of death benefit payments; and

!                  
the recipient of death benefit payments.

 

The trial court also concluded that Texas Mutual=s petition was unreliable as a matter
of law and that Texas Mutual failed to comply with Tex. R. Civ. P. 95.








Rule 95 provides that payment is an affirmative
defense.  This defense must be
specifically pleaded and is not raised by a general denial.  Sw. Fire & Cas. Co. v. Larue, 367
S.W.2d 162, 163 (Tex. 1963).  We have
found no case applying this rule to a petition in intervention seeking
affirmative relief.[4]  The rule=s
language does not support such an application, and we find that the trial court
erred when it concluded Rule 95 applied to Texas Mutual=s
petition in intervention.  The trial
court=s
statement that the petition was unreliable as a matter of law does not provide
an independent basis for striking the petition. 
We assume that this merely restates the trial court=s other findings.

The form and content of a petition in intervention
is controlled by the general rules of pleading. 
Tex. R. Civ. P. 61; 1 Roy W. 
McDonald & Elaine A. Grafton Carlson, Texas Civil Practice ' 5:82 (2d ed. 2004).  Texas follows a notice practice.  A petition provides sufficient notice if it
gives the defendant fair notice of the facts relied upon, enabling it to
prepare a defense.  Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 897 (Tex. 2000); see also
Coffey v. Johnson, 142 S.W.3d 414, 417 (Tex. App.CEastland
2004, no pet.)(the test for fair notice is whether an opposing attorney of
reasonable competence, with the pleadings before him, can determine the nature
of the controversy and the testimony that would probably be relevant).

The fair notice requirement does not require the
pleader to plead evidentiary matters with meticulous particularity.  State Fid. Mortgage Co. v. Varner, 740
S.W.2d 477, 480 (Tex. App.CHouston
[1st Dist.] 1987, writ denied).  A party
seeking relief must state enough facts to inform the defendant of the nature of
the claim.  The pleading does not need to
include the evidence on which the party intends to rely.  Paramount Pipe & Supply Co. v. Muhr,
749 S.W.2d 491, 494-95 (Tex. 1988).  The
intervenor=s
pleading should, however, include the facts which establish a justiciable
interest.  H. Tebbs, Inc. v. Silver
Eagle Distribs., Inc., 797 S.W.2d 80, 84 (Tex. App.CAustin
1990, no pet.).

Texas Mutual alleged in its petition in
intervention that it was Key City=s
workers=
compensation carrier, that it had paid benefits to Charles=s spouse and son, and that its payments
as of the filing of the petition in intervention were in excess of
$28,000.  Texas Mutual alleged that it
was subrogated to the rights of Charles=s
spouse and son for the full amount of all past and future payments; and it
sought reimbursement from the defendants, Nelms Electric and Scotsman, Inc.
Finally, Texas Mutual adopted by reference the allegations of appellee=s live pleading.








Texas Mutual=s
petition satisfied the Texas Rules of Civil Procedure and provided appellee
fair notice.  The trial court=s holding that the petition was
inadequate because it failed to provide information on specific payments is
inconsistent with Texas law.  To the
extent the trial court required Texas Mutual to specifically identify and
describe each past payment, it improperly required Texas Mutual to include the
evidence upon which it intended to rely. 
Cf. Paramount Pipe, 749 S.W.2d at 494-95.  To the extent the trial court required Texas
Mutual to provide this information for future payments, it violated Tex. R. Civ. P. 47(b) because Texas
Mutual=s future
obligation is unliquidated.[5]  See also Capitol Brick v. Fleming Mfg.
Co., 722 S.W.2d 399, 401 (Tex. 1986)(Rule 47 precludes a party, except in
response to a special exception, from pleading unliquidated damages in a
specific amount).

We are aware of no case requiring an intervenor
seeking reimbursement of benefits previously paid to provide the level of
detail on individual payments required by the trial court.[6]  Moreover, such a requirement is inconsistent
with Tex. R. Civ. P. 45, which
requires courts to construe pleadings so as to do substantial justice. 

Texas Mutual established a
justiciable interest. The trial court did not find that Texas Mutual=s intervention would complicate the
case by an excessive multiplication of the issues or that it would delay the
resolution of this matter.  Intervention
was necessary for Texas Mutual to protect its rights, as is confirmed by the
trial court=s
judgment denying it any recovery but ordering it to continue paying future
benefits.  Consequently, we find that the
trial court abused its discretion when it struck Texas Mutual=s petition.  Texas Mutual=s
first issue is sustained.  Because the
trial court struck Texas Mutual=s
petition, Texas Mutual was no longer a party, and it was error for the court to
consider the sufficiency of Texas Mutual=s
proof.  We reverse the trial court=s judgment and remand for further
proceedings.  This holding makes it
unnecessary for us to address Texas Mutual=s
third issue and appellee=s
second cross-issue to the extent it addressed the appropriate standard of
review for this issue.

                 Did the Trial Court Err When it
Granted the Plaintiffs=
Motion 

                                        to
Nonsuit All Claims Save Those of the Estate?

 








Texas Mutual alleges that the trial court erred
when it allowed the plaintiffs, save the estate, to nonsuit their claims
because this enabled the plaintiffs to circumvent Texas Mutual=s statutory right of subrogation.  Appellee contends that there is no error
because the nonsuit did not affect Texas Mutual=s
right to seek reimbursement.

Appellee is correct.  A plaintiff has the right to nonsuit its
claims at any time before it introduces its evidence.  Tex.
R. Civ. P. 162.  Court approval is
not required.  Consequently, the trial
court did not err.[7]  Texas Mutual=s
characterization of the impact of that nonsuit is also incorrect.  Plaintiffs=
nonsuit did not eliminate Texas Mutual=s
right to seek reimbursement from the remaining parties or to bring a separate
action against any of the former plaintiffs. 
Texas Mutual=s second
issue is overruled.

We note that the trial court=s final judgment purports to adjudicate
the claims of nonparties.[8]  This is improper.  When plaintiffs nonsuited their claims, they
were no longer parties and the trial court lacked jurisdiction to enter a
judgment for or against them.  The Estate
was the only remaining plaintiff.  When
the trial court reconsiders this case after remand, any judgment should be
limited to the parties before the court.

                         Did
the Trial Court Err When it Ordered Texas Mutual to Continue

                                                 Making
Future Indemnity Payments?

The trial court ordered Texas Mutual to continue
making indemnity payments and forbade it from making any claim for
reimbursement for monies reflected in the settlement.  Appellee contends that Texas Mutual made a voluntary
decision to appear at the settlement hearing as a party and, therefore, is
bound by the same rules applicable to the other parties.  Appellee contends further that res judicata
and collateral estoppel prevent Texas Mutual from recovering any of the settlement
proceeds, past or future, and, therefore, that the trial court did not err.

Appellee is correct that Texas Mutual subjected
itself to the trial court=s
jurisdiction and the rules of civil procedure when it filed a petition in
intervention.  Appellee is incorrect that
res judicata and collateral estoppel prevent Texas Mutual from taking any
further action in the future to protect its interests or that the trial court
properly adjudicated Texas Mutual=s
obligations to nonparties.  








Res judicata requires (1) a prior final judgment
on the merits by a court of competent jurisdiction, (2) identity of parties or
those in privity with them, and (3) a second action based on the same claims as
were raised or could have been raised in the first action.  Mayes v. Stewart, 11 S.W.3d 440, 449
(Tex. App.CHouston
[14th Dist.] 2000, pet. denied).  Because
we are reversing the trial court=s
judgment, it has not become final. 
Moreover, all plaintiffs, save the estate, nonsuited their claims.  With regard to indemnity payments, there is
no privity between the nonsuiting plaintiffs and any other party.  Thus, res judicata does not prevent Texas
Mutual from asserting a future claim against them for reimbursement of
indemnity payments.

Nor does collateral estoppel apply.  Collateral estoppel bars relitigation of any
ultimate issue of fact actually litigated and essential to the final
judgment.  Getty Oil Co. v. Ins. Co.
of N. Am., 845 S.W.2d 794, 798 (Tex. 1992). 
We have previously held that the trial court erred by striking Texas
Mutual=s
petition and are reversing and remanding the trial court=s
judgment for further proceedings. 
Consequently, there is no final judgment.

The trial court also erred because it improperly
denied Texas Mutual its statutory right of reimbursement.  Texas law is clear that a compensation
carrier has a right of reimbursement from the first monies paid.[9]  That right must not be compromised by other
parties; and the trial court may not enter a judgment which arbitrarily
compromises the carrier=s
right to subrogation by structuring the award so that a non-beneficiary recovers,
but a beneficiary does not.  U.S. Fire
Ins. Co. v. Hernandez, 918 S.W.2d 576, 579 (Tex. App.CCorpus Christi 1996, writ denied).  When the allocation of settlement proceeds
impacts a carrier=s right
of reimbursement, trial courts must allocate the proceeds based upon the
relative merits and worth of the claims involved.  See id.








The trial court allocated 100% of the settlement
to the decedent=s
conscious pain and suffering, even though there was little to no evidence that
the decedent suffered.[10]  Conversely, the trial court was presented
with clear and uncontroverted evidence establishing other forms of damage.  Plaintiffs alleged claims for pecuniary loss,
lost services, mental anguish, lost inheritance, and lost consortium.  Paula testified that, at the time of her
husband=s death,
she was not working outside the home and that she and her son depended upon her
husband for support.  The record
evidences no marital or family troubles or other reason to doubt the legitimacy
of the nonsuited claims.  Consequently,
the record conclusively establishes that there were several elements of damage
besides the decedent=s
conscious pain and suffering.  Trial
courts cannot apportion settlement proceeds in a manner that circumvents the
carrier=s right
of subrogation.  Tex. Workers= Comp. Ins. Fund v. Travis, 912
S.W.2d 895, 898-99 (Tex. App.CFort
Worth 1995, no writ).  The trial court=s decision to apportion 100% of the
proceeds to the decedent=s
conscious pain and suffering, knowing that all other claims were being waived
as part of the settlement,[11]
and to deny Texas Mutual any future right of reimbursement was erroneous as a
matter of law.  See id.  Texas Mutual=s
fourth issue is sustained.  Appellee=s second cross-issue is overruled.

                                  Conclusion

The trial court=s
judgment is reversed, and this case is remanded for further proceedings.

 

 

RICK STRANGE

JUSTICE                                 

 

June 1, 2006

Panel
consists of:  Wright, C.J., and

McCall,
J., and Strange, J.











     [1]The
scheduling order required a party seeking relief to designate experts and
provide reports by August 31, 2004.





     [2]No
party has asked this court to allow the late-filed findings and
conclusions.  We will, however, exercise
our discretion to consider them for the purposes of determining why the trial
court struck Texas Mutual=s petition in intervention.





     [3]Appellee
asserts that the standard of review for Texas Mutual=s third and fourth issues, which challenge the trial
court=s decision to deny Texas Mutual=s right of subrogation and order it to continue making
benefit payments, is legal and factual sufficiency.  Appellee asserts in her third issue that the
standard of review for Texas Mutual=s
challenge to the trial court=s decision to grant plaintiffs= motion for nonsuit is abuse of discretion.





     [4]The
rule=s language indicates that it applies when a defendant
contends it does not owe a plaintiff=s claim
in whole or in part because of prior payments. 
See, e.g., Castle Tex. Prod. Ltd. P=ship v. Long Trusts, 134 S.W.3d 267, 276 (Tex. App.CTyler
2003, pet. denied).  This construction is
also supported by the case appellee cites for the proposition that Rule 95
applied to Texas Mutual=s petition. 
Appellee cites Twin City Fire Ins. Co. v. Cortez, 562 S.W.2d 940,
945 (Tex. Civ. App.CAmarillo), rev=d
on other grounds, 576 S.W.2d 786 (Tex.
1978).  Twin City was not an
intervention case, but an action for compensation benefits filed by the
employee against the carrier.  The
carrier claimed its liability was limited by prior payments to the
employee.  The court held that Rule 95
applied to this defense.





     [5]A
workers= compensation carrier is required to pay death benefits
to an eligible spouse for life or until remarriage.  It is required to pay benefits to an eligible
minor child until the child turns eighteen or, if the child is a full-time
student, until the earliest of the child ceasing to be a full-time student,
turning twenty-five, or dying.  Tex. Lab. Code Ann. ' 408.183 (Vernon 2006).





     [6]Tex. R. Civ. P. 56 requires specificity
when pleading special damages, such as consequential damages; but Texas Mutual=s claim is not subject to Rule 56 because it was not
seeking special damages.  Cf. Naegeli
Transp. v. Gulf Electroquip, Inc., 853 S.W.2d 737, 739 (Tex. App.CHouston [14th Dist.] 1993, writ denied)(consequential
damages are special damages and must be pleaded and proved separately).





     [7]This
holding moots appellee=s third issue which asks us to apply an abuse of
discretion review to this question.





     [8]For
example, the judgment provides that the settlement agreement is in the best
interest of the minor child, and it references a report from the child=s attorney ad litem. 
That report is not part of the record, and the minor child=s claims were nonsuited before the hearing.  The attorney ad litem had no further role
after the nonsuit, and the court lacked authority to adjudicate the minor=s rights.





     [9]Tex. Lab. Code Ann. '' 417.001-.002 (Vernon 2006).





     [10]Appellee
suggests one possible reason for the nonsuit was federal taxation
considerations.  In an appropriate case,
that may be a relevant inquiry, but no evidence was presented to the trial
court on the federal tax impact of this settlement.  We can take judicial notice that pain and
suffering is not taxable as income, but we can also take judicial notice of the
potential federal estate tax consequences of this settlement.  By allocating approximately 2.3 million to
the estate, a taxable estate for estate tax purposes was created and a
potential tax liability, after deducting the 1.0 million unified credit, of
approximately $448,300 was incurred.  See
26 U.S.C. '' 2001(c)(1), 2010(c). 
Consequently, we cannot say that the potential tax consequences of this
allocation justify the trial court=s
decision.





     [11]The
trial court=s allocation also causes concern because the minor
child=s representative waived the minor=s claims even though no portion of the settlement was
placed in trust for the minor=s benefit. The minor=s claims
were originally filed by his mother as next friend.  The trial court appointed an attorney ad
litem because of the potential conflict of interest between Paula and her minor
son. Charles died intestate.  Paula was
appointed administratrix of the estate. 
Payment of 100% of the settlement proceeds to the estate did not resolve
the conflict.  Regardless of whether the
minor is represented by a next friend or ad litem, the minor remains the real
party and is under the court=s protection.  Mo.-Kan.-Tex.
Ry. Co. of Tex. v. Pluto, 156 S.W.2d 265, 268 (Tex. 1941).